[Civ. No. 3691. Second Appellate District, Division Two.—June 16, 1923.]

## CRISAFULLI BROS., Appellant, v. CUCAMONGA VINTAGE COMPANY, Respondent.

[1] Broker's Commissions — Application to Payment of Debt of Third Party—Instructions—Evidence—Findings.—In this action to recover a commission for procuring contracts for the purchase of wine by defendant, the evidence, though conflicting, was sufficient to justify the trial court in finding that plaintiff's assignor directed the application of his commission earned to the payment of the indebtedness due defendant by certain third parties, and that in that way the plaintiff's claim had been paid.

[2] Id.—Evidence—Conversations—Book Entries.—In such an action, the defendant is properly permitted to introduce in evidence the conversations between its representatives and plaintiff's assignor, and it is not necessary that defendant prove its acceptance of the offer made by plaintiff's assignor by the production of books showing an entry to that effect.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Adams, Adams & Binford for Appellant.

Leonard, Surr & Hellyer for Respondent.

CRAIG, J.—Plaintiff's assignor, G. Crisafulli, and the Cucamonga Vintage Company, entered into contract in writing, dated November 7, 1918. Under this agreement G. Crisafulli became entitled to commissions amounting to $1,950.06. These sums were earned through his services rendered as a broker in procuring for the defendant two contracts to purchase wine referred to as the Mariani Bros. and Bellanca & Co. contracts and which were dated October 31 and November 7, 1918, respectively. The contract between G. Crisafulli and the defendant was executed just after the other contracts mentioned and stipulated that the broker should receive a commission of two cents per gallon for one sale and three cents per gallon for the other.

On November 21, 1918, Crisafulli, acting as agent and broker for Joe Finelli and one E. Penna, executed contracts for each of these parties by which they agreed to buy Cicilian wine from the company. The contracts contained this provision: "The buyer agrees to pay Ten Dollars ($10) per barrel within five days from this date, balance to be paid by sight draft attached to Bill of Lading." Under these two contracts the defendant was entitled to receive $3,000 on or before November 26, 1918. Neither Penna nor Finelli ever made any payment to the defendant but the trial court found that Crisafulli directed the application of his commissions earned under the Mariani Bros. and Bellanca & Co. contracts to payment upon the $3,000 due defendant under the Finch and Penna contracts; and that in this way the plaintiff's claim had been paid.

[1] Appellant contends that the evidence is insufficient to support this finding. It is true that the testimony is conflicting, but we think that it justifies the construction placed upon it by the superior court. Three witnesses testified that Crisafulli authorized the president of the defendant company to make the application of the commissions which he sues to collect upon the $3,000 owing the company. Referring to a conversation in January, 1919, the witness Thomas, president of the Cucamonga Vintage Company, testified that Crisafulli said "to apply these commissions against these contracts" and further, "and we made some annotations that we were doing that, at the time." Another witness gave his recollection of the same conversation. This was H. I. DeBerard, the vice-president of the Cucamonga Vintage Company, and who also acted as bookkeeper. He testified that Crisafulli said, "That is all right, you have your commission applied on those contracts, and that is sufficient funds, and it will be all right," he said, "I'll fix the cars in case they don't take them. Q. He agreed to stand behind them in the event they didn't take them? A. Yes. Q. Then it wasn't at this conversation that Mr. Crisafulli first said to apply it: it had already been said by Mr. Crisafulli before this and also in your presence? A. Yes, sir. Q. You knew all about understanding that this sum was to be applied, this commission was to be applied on those contracts, didn't you? A. Yes, sir."

Another witness, A. J. Perelli-Minetti, recounted a conversation with Crisafulli carried on over the telephone. The witness, who represented the company, informed Crisafulli that the amount called for under the Finelli and Penna contracts had not been paid. Then, according to the witness, Crisafulli replied: "That is all right, you just apply the money that is due me on this commission on the Mariani and Bellanca contracts." Mr. Perelli-Minetti also testified to another conversation, at which were present, beside the witness, Crisafulli, Thomas DeBerard, and Carlo Perelli-Minetti. This was apparently the same occasion referred to by the witnesses Thomas and DeBerard. Perelli-Minetti states that Crisafulli said in Italian, " 'What you people are afraid of? You have more money on account of this contract than you ever had in any other contract,' and he turned to me after I told him to say in English and he told me we could apply the money due him on commissions of Mariani and Bellanca contracts." The witness was then asked: "When that remark was made what did you and the other gentlemen present say with reference to that instruction; did you accede and agree to it?" To which he replied, "Yes, we said we were satisfied." Appellant contends that from these and other parts of the transcript the true arrangement between the parties was that Crisafulli agreed to answer for the debt or default of Finelli and Penna on their contracts, but that such agreement not being in writing, was void under the statute of frauds. There is other evidence to support this theory, but since we are satisfied that the testimony which we have quoted is sufficient to support the findings of the trial court, it would serve no useful purpose to include all of the testimony given in this opinion. The most that can be said is that there is a conflict in the evidence. It is unnecessary to say that under such circumstances the findings will be sustained. As the trial court interpreted the transaction, Crisafulli did not merely agree to answer for the debt or default of others, but he actually answered for the same and paid the sum of his commission upon the amount owing the defendant by Finelli and Penna. The fact is immaterial, if it be one, that the exact amount due Crisafulli was unascertained when the application was made. The number of gallons sold was known, but one wit-

ness testified that sometimes a barrel of wine was lost in shipment, which, of course, might reduce the amount of the broker's commission slightly.

[2] Nor was it necessary that the defendant prove its acceptance of Crisafulli's offer by the production of books showing an entry to that effect. It is the fact of payment and acceptance, and not the condition of the defendant's books, which is important. (*Anaheim* v. *Parker*, 101 Cal. 483 [35 Pac. 1048].) Books are competent, but not conclusive or essential evidence to prove such transactions.

What we have said disposes of the contention that the evidence of the conversations to which reference has been made was improperly received. The trial court pursued the proper course in admitting the evidence upon the assurance of counsel that it would establish a cancellation of plaintiff's claim by the application of it to the amounts owing from Finelli and Penna to the defendant company.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.